IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| KEALAND CATO,<br><br>Plaintiff,<br><br>vs.<br><br>CLUB ROUGE PORTLAND; ROUGE PORTLAND LLC; JOHN DOE<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR UNLAWFUL DISCRIMINATION IN PLACE OF PUBLIC ACCOMMODATION UNDER ORS § 659A.403<br><br>NOT SUBJECT TO MANDATORY ARBITRATION<br><br>Prayer: $425,000.00<br><br>Fee Authority: ORS 21.160(1)(c) - $594<br><br>JURY TRIAL DEMANDED |

Plaintiff demands a jury trial and alleges:

**PARTIES**

1. Plaintiff Kealand Cato is a resident of Oregon. He is a Black man.

2. At all relevant times, defendant Club Rouge Portland was a night club located at 403 SW Harvey Milk St., Portland, Oregon 97204 and registered to defendant Rouge Portland LLC. Upon information and belief, Rouge Portland LLC is the owner and operator of Club Rouge Portland.

3. Upon information and belief, Defendant John Doe is a resident of Oregon and at all relevant times was acting in the course and scope of his employment as the head of security

COMPLAINT - 1

Levi Merrithew Horst PC
610 SW Alder St., Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 1  Page 1 of 6

and bouncer at Club Rouge Portland (hereinafter "Club Rouge" or the "Club"). Mr. Doe is a white man.

**STATEMENT OF FACTS**

4.      On November 4, 2022, Mr. Cato, a freelance DJ, played a show at Shake Bar PDX between 12:30am and approximately 1:00am. After the show, Mr. Cato's sister, Dominique Glover, and two of their friends helped him pack up his DJ equipment and they drove to Club Rouge for a friend's birthday party. The group arrived at the Club between 1:00am and 1:15am.

5.      Mr. Cato dropped Ms. Glover off at Club Rouge. She paid a $10 cover fee and entered the Club without having her ID checked. Once inside, she met up with six friends who had entered earlier that night.

6.      After Ms. Glover entered the Club, Mr. Cato and his two friends found a parking space and locked his DJ equipment securely in the trunk. Mr. Cato's two friends then went to find something to eat, and he walked back to the Club.

7.      Mr. Cato approached the door of Club Rouge alone, approximately five minutes after his sister entered. The bouncer asked Mr. Cato for his ID, which Mr. Cato promptly handed over.

8.      Mr. Cato had a Georgia driver's license. The bouncer inspected Mr. Cato's ID thoroughly before telling him he could not enter. Mr. Cato assumed he could not enter because of his out-of-state ID card. He volunteered to verify his ID and age, which the bouncer declined. The bouncer then handed the ID over to Defendant Doe.

9.      Although the Club did not close until at least 2am, Defendant Doe told Mr. Cato that Club Rouge was "done for the night." Mr. Cato was frustrated that he could not join his

COMPLAINT - 2

LEVI MERRITHEW HORST PC
610 SW ALDER ST., SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 1  Page 2 of 6

friends inside to celebrate, but he politely asked the Club workers to locate his sister so he could give her a ride home.

10. While Mr. Cato waited outside, a staff member entered Club Rouge and escorted Ms. Glover outside to the entrance of the club. She had been inside for less than 10 minutes.

11. When Ms. Glover exited the club, Mr. Cato asked the security guards to reimburse Ms. Glover's $10 cover because she had been at the club for less than ten minutes. The security guards refused to return Ms. Glover's $10. Mr. Cato then tried to establish a deferential camaraderie by code switching with the security guards and saying, "My n***a, it's just $10."

12. At this time, Defendant Doe, who is white, began to yell hateful racial epithets at Mr. Cato including, "I'm not your n***er," and "go home n***er." Defendant Doe yelled these racial slurs, using a hard "R," seven to eight times in front of other customers.

13. Mr. Cato and Ms. Glover were shocked and humiliated by the white bouncer yelling racial slurs at them. Mr. Cato immediately requested to speak to Club Rouge management.

14. Faced with these insults, Ms. Glover, who is also Black, felt that she needed to stand up for her brother and herself. She told Defendant Doe that his comments were inappropriate. In response, Defendant Doe continued to repeat the hard "R" n-word comments, but he now directed them at Ms. Glover. Ms. Glover was hurt, shocked and embarrassed. Ms. Glover then stated that she left her wallet inside the club; she reentered so she could alert her friends to the hostile and racist situation. The entire group immediately exited the club together.

15. Approximately six individuals were waiting in line to enter Club Rouge when Defendant Doe shouted the n-word repeatedly at Mr. Cato and Ms. Glover. Several of those

COMPLAINT - 3

Levi Merrithew Horst PC
610 SW Alder St., Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 1   Page 3 of 6

individuals were people of color and they immediately left the line when Defendant Doe began yelling the n-word. Two individuals, however, remained in line and Defendant Doe let them both into the Club despite having just denied entry to Mr. Cato because the Club was supposedly "done for the night.". At least one of those men who was allowed in after Mr. Cato was denied entry was white. On his way into the Club, this white patron told Defendant Doe that he could not use the n-word. Defendant Doe said nothing, collected the man's cover, and allowed him to enter the club.

16. A third man exited Club Rouge just prior to the incident and was smoking a cigarette near the entrance to the club. After hearing Defendant Doe's comments, he also told Defendant Doe that his remarks were not acceptable. Defendant Doe then allowed the man to reenter Club Rouge.

17. Mr. Cato and his group waited for a manager for approximately 25 minutes outside of the club. No one ever came to speak with them. Realizing they would not get to speak with a manager, Mr. Cato, Ms. Glover, and the rest of the group returned to their cars and left.

18. Since this incident, Mr. Cato has contacted the club multiple times through phone and social media to resolve the situation. No one has returned his messages and Club Rouge has since blocked him on social media. As a result, Mr. Cato continues to experience feelings of stigmatization and distress from this unresolved, racist encounter.

19. This discriminatory incident has also impacted Mr. Cato's professional career. Portland has a tight-knit club scene, and many bouncers and entertainers work at more than one club. Mr. Cato was told that he would be ostracized from the Portland club scene if he pursued legal action in this matter. After he contacted the Club by phone and on social media, Mr. Cato has lost DJ opportunities in Portland.

COMPLAINT - 4

Levi Merrithew Horst PC
610 SW Alder St., Suite 415
Portland, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 1  Page 4 of 6

20. Defendant Doe remains employed by Club Rouge.

**FIRST CLAIM FOR RELIEF**

**UNLAWFUL DISCRIMINATION IN PLACE OF PUBLIC ACCOMODATION**

**ORS § 659A.403**

21. Plaintiff re-alleges paragraphs 1-20 as if fully set forth herein.

22. The above-described defendant, Club Rouge Portland, is and at all times mentioned herein has been a place of public accommodation within the meaning of ORS § 659A.400.

23. At least part of the motivation for the above-described conduct on the part of the described defendant employees was plaintiff's race.

24. The above-described conduct violates ORS § 659A.403 which prohibits discrimination in places of public accommodation on account of race.

25. Defendants do not treat similarly situated white or white-passing customers as they treated plaintiff.

26. As a result of the above-described discrimination, plaintiff suffered, continues to suffer, and may permanently suffer from feelings of racial stigmatization, humiliation, embarrassment, pain, suffering, and anger, all to his noneconomic damages in an amount not to exceed $425,000.00. This amount may change depending on whether plaintiff's condition improves, persists, or worsens. Mr. Cato has also lost work opportunities in an amount to be calculated at trial.

27. Plaintiff is entitled to reasonable attorney fees pursuant to ORS § 659A.885(8).

28. Plaintiff intends to move to amend his complaint to seek punitive damages.

COMPLAINT - 5

LEVI MERRITHEW HORST PC
610 SW ALDER ST., SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 1   Page 5 of 6

1  WHEREFORE, plaintiff demands judgement against each defendant for damages in the sum of

2  $425,000.00 in noneconomic damages, for lost wages and for his attorney fees, costs, and

3  disbursements necessarily incurred herein.

4        DATED this 19th day of July, 2023.

LEVI MERRITHEW HORST PC

By: s/ Noah Horst
Noah Horst, OSB #076089
Ethan Levi, OSB #994255
610 SW Alder Street, Suite 415
Portland, OR 97205
Phone: 971-229-1241
Email: noah@lmhlegal.com
Email: ethan@lmhlegal.com
Of Attorneys for Plaintiff

COMPLAINT - 6

LEVI MERRITHEW HORST PC
610 SW ALDER ST., SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

Exhibit 1  Page 6 of 6